# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL A. MOSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 11-CV-113-WDS |
| ) | |
| OFFICERS SEAN McPEAK, and ) | |
| ROBERT DAVENPORT, ILLINOIS ) | |
| SECURITY OF ST. CLAIR COUNTY, ) | |
| ) | |
| Defendants. | |

## MEMORANDUM AND ORDER

**STIEHL, District Judge:**

Before the Court is a joint motion to dismiss filed by defendants Sean McPeak and Robert Davenport on plaintiff's claim for false arrest (Doc. 17). Plaintiff has filed a response to the motion to dismiss (Doc. 26). The Court construed the motion to dismiss as one for summary judgment (See Order at Doc. 31), and the parties have completed briefing the issues and the matter is ready for ruling.

## BACKGROUND

Plaintiff's claims arise out of an arrest which occurred on March 29, 2010, when the defendants, St. Clair County Sheriff's deputies, approached, detained and arrested plaintiff at a bus stop near the MetroLink Station at Fifth and Missouri Avenues in East St. Louis, Illinois. Plaintiff originally filed this action pro se[1]. The Court has reviewed the allegations, and finds that plaintiff's claims are: excessive use of force in effectuating the arrest; illegal search and

---

[1] The Court notes that although plaintiff is now represented by counsel, the pro se complaint has not been amended by counsel, therefore the claims contained in that complaint are the only claims before the Court.

seizure; and false arrest. The complaint alleges that plaintiff is a homeless person with mental and physical challenges and that he was approached by the defendants at the MetroLink station, told that he should leave the area or go to jail. Plaintiff alleges that he refused, saying that he would go to jail because he had not done anything. He further alleges that he was then handcuffed, thrown to the ground and kicked. He was taken to Kenneth Hall Hospital where he refused medical treatment, allegedly because Deputy Davenport would not leave the room. He was taken to St. Clair County Jail, which, he asserts, has a record of his cuts and bruises. Plaintiff further asserts that he did not know that he was on MetroLink properly because he was behind a bus shelter and away from patrons.

Defendants assert that they were working security at the MetroLink stop, and were in the guard shack when a patron complained that there was a person near the bus stop shelters "cursing and screaming and yelling at people, and they believed that he was drunk." (McPeak depo. 11/17, Doc. 35, ex. 2, p. 26). McPeak testified that Deputy Davenport approached the plaintiff and advised him that he would have to leave the property or be in criminal trespass due to his intoxication, vulgar speech and cursing. The defendant replied with a curse; Deputy Davenport then tried to handcuff him, and explained that the plaintiff was under arrest, but the plaintiff pulled away, which is when he was grabbed by McPeak as well and all three of them fell to the ground. (*Id.* 31-33). They took the plaintiff back to the guard shack, and plaintiff did not want Davenport to search him. Plaintiff became quite agitated during the search and fell off of the milk crate he was sitting on in the guard shack and onto the ground. Plaintiff remained outside the shack until Deputy Davis came to take him to the hospital. (*Id.* at 37) McPeak observed only one cut on plaintiff's head (*Id.* at 38).

2

Deputy Davenport testified that they received a complaint from a black male who said that the plaintiff was cussing and screaming near the bus shelters. (Davenport depo. Doc. 35, ex 3, p. 17.) Deputy Davenport told the plaintiff to leave the property, at which time the plaintiff cursed at Davenport. Davenport told the plaintiff he was under arrest and to put his hands behind his back. Plaintiff did not comply, and yanked away and Davenport, McPeak and the plaintiff fell to the ground (*Id.* at 20-21). As they struggled to handcuff the plaintiff, he continued to scream and curse. Once handcuffed, the deputies took the plaintiff to the guard shack and put him on a milk crate as a chair. They started searching his pockets, which the plaintiff did not like, and he began kicking and spitting. (*Id.* at 21-23.) They took him out of the guard shack because he was spitting, and waited until Deputy Davis came to pick up the plaintiff. Plaintiff was taken to the hospital because he was bleeding, but plaintiff refused treatment because he did not want Deputy Davenport in the room with him (*Id.* at 28-31).

Plaintiff testified at his deposition that he was not "drunk" at the time of the incident, but that he had been drinking and was under the influence of alcohol. He stated, in qualifying his level of intoxication that he was not "in harm's way." (Plaintiff depo. Doc. 35, ex. 1 pp. 20-21; 27). He noted that he was homeless at that time, and was regularly using cocaine and abusing alcohol at the time of the incident. (pp. 19-20). He was not screaming or cursing, but may have been singing a rap song (*Id.* at 22). Plaintiff acknowledged that when he was asked to leave or go to jail he responded, "Well, take me to jail." (*Id.* at 25). He stated that he did not resist being handcuffed; did not spit on anyone, but he was forced to the ground where he was hit, kicked, stomped and beaten (*Id.* at 27-28; 29). He acknowledged declining treatment at the hospital (*Id.* at 32). He also testified that he only pleaded guilty in state court because they offered him a

3

deal, e.g. probation. (*Id.* at 30).

**DISCUSSION**

The Defendants seek summary judgment on the grounds that plaintiff's claims of excessive use of force and false arrest are barred by his subsequent plea and conviction to aggravated resisting a peace officer in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois under the holding of *Heck v. Humphrey*, 512 U.S. 477 (1994).[2]

To determine whether *Heck* bars plaintiff's claims, the Court must determine whether the federal claim, if successful, would necessarily invalidate the state conviction of aggravated resisting a peace officer. In Illinois, the "crime of resisting a peace officer involves the commission of 'a physical act of resistance or obstruction. . .that impedes, hinders, interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest.'" *Brooks v. City of Aurora, Ill.* 653 F.3d 478, 484 (7th Cir. 2011) (*quoting, People v. Agnew–Downs,* 936 N.E.2d 166, 173 (Ill. App. Ct. 2010)). Notably, "[r]esisting even an unlawful arrest [by] a known police officer violates the statute." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008), *quoted in Brooks,* 653 F.3d at 484. In this case, plaintiff's claims are that he was subject to excessive force when he was arrested and that he was wrongfully arrested. Because plaintiff pleaded guilty to aggravated resisting a peace officer, he cannot, under *Heck*, now claim that the arrest itself was improper. As the Seventh Circuit noted in *Brooks v. City of Aurora, Il.,* 653 F.3d 478, 484 (7th Cir. 2011), "Illinois courts define 'resisting' or 'resistance' as 'withstanding the force or effect of or the exertion of oneself to counteract or defeat.'" (citations omitted). Plaintiff acknowledged that he knew that both

---

[2]The plaintiff received a sentence of one year in the Illinois Department of Corrections on his plea. (See, Doc. 18, ex. 3.)

4

McPeak and Davenport were law enforcement, and he pleaded guilty to the charge of aggravated resisting arrest, therefore, he cannot now claim that the arrest itself was false. And, once the deputies seized plaintiff, they "had probable cause to arrest him for resisting a peace officer." *Brooks*, 653 F.3d at 485.

Plaintiff's only remaining claim for excessive use of force is limited, by *Heck*, to force used after he was actually arrested. This is because *Heck* does not bar an excessive force claim if the plaintiff proceeds on the theory that the degree of force applied was unreasonable under the circumstances. In *Evans v. Poskon*, 603 F.3d 362 (7th Cir.2010), the plaintiff alleged that he "was beaten mercilessly [by the defendant police officers] both before and after the officers gained custody of him." *Id.* at 363. The Seventh Circuit held that *Heck* barred the plaintiff from pursuing an excessive force claim premised on the theory "that he did not resist being taken into custody," for that theory was "incompatible" with the plaintiff's resisting arrest conviction. *Id.* at 364. But, the court held that *Heck* would not bar the claim if the plaintiff proceeded on the theories "that the police used excessive force to effect custody" and "that the police beat him severely even after reducing him to custody," for those theories would be "entirely consistent" with the conviction. *Id*.

Notably, the Seventh Circuit allowed the *Evans* plaintiff to pursue his excessive force claim because he was willing to proceed *only* on the permissible theories. *Id*.; see also *Hardrick*, 522 F.3d at 764 ("The fact that Hardrick 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time, Hardrick was 'peaceably waiting to be handcuffed.' Whether a fact-finder would find this scenario plausible is not for us to conclude, but in terms of *Heck*, it is not one that 'necessarily' implies the invalidity of the

5

conviction, and does not bar Hardrick's excessive force claim."); *Gilbert*, 512 F.3d at 902 ("*Heck*. . .do[es] not affect litigation about what happens after the crime is completed. Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but whether the force was reasonable is a question that may be litigated without transgressing *Heck*.")

Although it seems weak, whether a fact-finder would actually find plaintiff's scenario plausible (that he was beaten after being handcuffed) is not for this Court to determine. *Evans*, 522 F.3d at 764. Under *Heck*, the Court cannot grant the motion for summary judgment as to the plaintiff's claim that *after* being handcuffed the defendants subjected the plaintiff to excessive use of force. In allowing this claim to go forward, the Court will limit plaintiff's evidence accordingly.

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendants' motion for summary judgment. The Court **GRANTS** the motion for summary judgment as to all claims based upon events which occurred before and through the arrest of the plaintiff pursuant to *Heck v. Humphrey*. The Court **DENIES** the motion for summary judgment as to plaintiff's claim that after he was seized the defendants subjected him to excessive force.

**IT IS SO ORDERED.**

**DATE: 26 March, 2012**

/s/ **WILLIAM D. STIEHL**
      **DISTRICT JUDGE**